UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KELLIE BOWLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-554 |
| | ) | (Shirley) |
| SCOTT COUNTY, TENNESSEE, and | ) | |
| EAST TENNESSEE HEALTH SYSTEMS, INC., | ) | |
| a wholly owned subsidiary of COMMUNITY | ) | |
| HEALTH SYSTEMS NETWORK, INC., and | ) | |
| COMMUNITY HEALTH SYSTEMS | ) | |
| PROFESSIONAL SERVICES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 18]. The Court heard oral argument on several pretrial motions on July 11, 2006 and at the pretrial conference on July 25, 2006.

### I.   MOTIONS REGARDING DEFENDANTS' EXPERT

The plaintiff moves for an extension of time to identify a rebuttal expert witness [Doc. 20] and further moves to exclude the testimony of the defendants' designated expert, Jerry Curtis [Doc. 41]. At the motion hearing, the defendants announced that they were withdrawing their designation of Mr. Curtis as an expert, and the parties agreed that this withdrawal renders both of

the plaintiff's motions moot. Accordingly, the plaintiff's Motion for Extension of Time [Doc. 20] and the plaintiff's Motion in Limine (Expert Witness) [Doc. 41] are **DENIED AS MOOT**.

II. **PLAINTIFF'S MOTION TO COMPEL**

The plaintiff moves to compel the defendant East Tennessee Health Systems, Inc. ("the Hospital") to provide discovery as to any investigation of the subject accident which the Hospital performed in the ordinary course of its business. The plaintiff also seeks disclosure as to investigations of all prior and subsequent accidents occurring at or near the access way where the plaintiff fell. [Doc. 24].

The plaintiff first sought this information through written discovery. In its response, while admitting that Dillard Strunk previously had fallen near the emergency room exit, the Hospital stated that there were no witness statements regarding Mr. Strunk's fall, and it refused to produce any incident reports and/or investigations performed as a result of this previous fall, citing attorney work product and attorney-client privilege. The Hospital also refused to produce such records regarding the plaintiff's fall, citing the same privileges.

In depositions on June 9, 2006, the plaintiff asked the Hospital's risk manager, Sonia Smithers, about the existence of these incident reports. Ms. Smithers testified that it was standard procedure to investigate all accidents occurring on the hospital's premises; that she was fairly certain that an incident report had been prepared following Strunk's fall; and that she was not sure whether an incident report had been prepared as a result of the plaintiff's fall. Plaintiff's counsel again requested these incident reports, and the defendants' counsel again asserted attorney work product.

2

The Hospital responds [Doc. 27] to the plaintiff's motion that in preparing responses to written discovery, Ms. Smithers searched for any documents that were prepared as part of the regular practice of the Hospital (and not in anticipation of litigation or to provide notice of potential liability to another) that described any fall outside the emergency room prior to the plaintiff's fall. In an affidavit submitted with the Hospital's response, Ms. Smithers states that after her deposition, she again reviewed the documents kept by the Hospital, including incident reports regarding falls. She states that she found the document that she was thinking of in her deposition, and it was a report regarding a fall that occurred within the emergency room involving a person who had snow on his shoes. Ms. Smithers states that the report is not related to either the Strunk fall or the area outside the emergency room. Based upon Ms. Smithers' testimony, the Hospital argues that there are no documents prepared in the regular course of business by the Hospital regarding any falls, and therefore, the plaintiff's motion to compel should be denied.

In her reply [Doc. 34], the plaintiff argues that it is "incredulous" that the Hospital claims that there is no incident report regarding Mr. Strunk's fall. Accordingly, the plaintiff requests (1) leave to re-depose Ms. Smithers regarding contradictions in her testimony; (2) to review all hospital accident reports as well as the minutes of all safety committee meetings beginning June 26, 2003 to December 31, 2003, the time period between Mr. Strunk's fall and the plaintiff's fall; and (3) to depose Mr. Strunk and the witnesses to his fall.

At the motion hearing on July 11, 2006, the Hospital's counsel advised the Court that the only document in the Hospital's possession regarding Mr. Strunk's fall is a form referred to by counsel as a "Liability Claims Notice to Counsel" form or "Notice to Counsel" form. Defense counsel argued that this form is privileged. Counsel, however, did not know who prepared that

3

form, nor had counsel prepared a privilege log as required by Fed. Civ. P. 26(b)(5). Defense counsel further argued that the minutes of the Hospital's safety committee meetings are privileged pursuant to Tenn. Code Ann. § 63-6-219. Defense counsel did not oppose the plaintiff's proposal to depose Mr. Strunk and the witnesses to his fall, but objected to the plaintiff re-deposing Ms. Smithers on the issue of the incident reports.

The parties completed the depositions of Mr. Strunk and the witnesses to his fall prior to the July 25, 2006 pretrial conference. Thus, the only issues remaining before the Court at that time were whether (1) the plaintiff is entitled to re-depose Ms. Smithers; (2) whether the defendant should be required to produce the Notice to Counsel form regarding Mr. Strunk's fall; and (3) whether the defendant should be required to produce the safety committee meeting minutes.

The Court finds that the plaintiff has not shown good cause to re-depose Ms. Smithers. Ms. Smithers was not the risk manager at the time of either Mr. Strunk's or the plaintiff's fall, and she did not prepare the report in question. Furthermore, Ms. Smithers adequately explains in her affidavit why she testified in her deposition the way she did, and therefore, the plaintiff has not shown any basis to question her further about her testimony. Accordingly, the plaintiff's request to re-depose Ms. Smithers is denied.

The Hospital objects to producing the "Notice to Counsel" form on the grounds of attorney-client privilege and attorney work product. The Sixth Circuit has described the elements of the attorney-client privilege as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

4

disclosure by himself or by the legal adviser, (8) unless the protection is waived." Reed v. Baxter, 134 F.3d 351, 355-56 (6th Cir. 1998).

When a claim of work product is made, the party seeking discovery must first demonstrate that the material sought is relevant to the subject matter of the litigation and not privileged pursuant to Rule 26(b)(1). Toledo Edison Co. v. G.A. Technologies, Inc., 847 F.2d 335, 339 (6th Cir. 1988). If the court determines that the material sought is relevant and not privileged, "the burden shifts to the objecting party to demonstrate that the material was 'prepared in anticipation of litigation or for trial' by or for that party or that party's representative." Id.

In the present case, the Hospital is unable to identify who prepared the "Notice to Counsel" form or when it was prepared. Without knowing who prepared the form or when it was prepared, the Court cannot determine that either the attorney-client privilege or work product protection is applicable to this document. Because the Hospital has failed to show the existence of a privilege or other protection, the Court finds that any such privilege or protection that may be applicable to this document is waived, and it must be produced.

Furthermore, the Hospital has failed to comply with the provisions of Rule 26(b)(5), which requires a party claiming privilege to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."[1] As the Advisory Committee's Note to Rule 26(b)(5) explains: "A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery

---

[1] Compliance with Rule 26(b)(5) is routinely achieved by the production of what is commonly known as a "privilege log."

5

Case 3:04-cv-00554 Document 60 Filed 08/10/06 Page 5 of 14 PageID #: 14

request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee's note, 1993 amendments. In the present case, the Hospital has not provided the Court with a privilege log, nor has it given the Court sufficient information in any form to evaluate the applicability of the attorney-client privilege or work product protection. The Hospital's failure to provide such information to the Court constitutes a separate basis for finding a waiver of any such privilege or protection in this case. See Carfagno v. Jackson National Life Ins. Co., 2001 WL 34059032, at *2 (W.D. Mich. Feb. 13, 2001) (finding defendant's failure to provide privilege log with sufficient information to permit the court to determine whether privilege existed provided independent ground for finding waiver of privilege).

While the Court finds that this document should be produced, the Court also finds that such production should be made pursuant to a mutually agreeable protective order, so as to prevent disclosure of this document outside of this litigation. Furthermore, the Court notes that it is not making any ruling at this time with respect to this document's admissibility at trial.

Finally, the Hospital contends that the safety committee meeting minutes are protected from discovery pursuant to the Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219. The stated policy of the Tennessee Peer Review Law is "to encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice medicine." Tenn. Code Ann. § 63-6-219(b)(1). As an incentive to encourage physicians to create "medical review committees" or "peer review committees," the statutes affords these committees certain immunities

and provides that all information, interviews, incident reports, statements, memoranda or other data furnished to such committees shall be privileged. Tenn. Code Ann. § 63-6-219(d), (e). Furthermore, the records and proceedings of such committees are confidential and "shall not be public records nor be available for court subpoena or for discovery proceedings." Tenn. Code Ann. § 63-6-219(e). The Tennessee Peer Review Law defines "medical review committee" or "peer review committee" as

> any committee of a state or local professional association or society . . . or a committee of any licensed health care institution, or the medical staff thereof, . . . the function of which, or one (1) of the functions of which, is to evaluate and improve the quality of health care rendered by providers of health care service[,] to provide intervention, support, or rehabilitative referrals or services, or to determine that health care services rendered were professionally indicated, or were performed in compliance with the applicable standard of care, or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area . . . .

Tenn. Code Ann. § 63-6-219(c).

The Hospital has not made any showing that the "safety committee" at issue is a "medical review committee" or "peer review committee" within the meaning of the Tennessee Peer Review Law, nor has any showing been made that such minutes would come within the policy of the Tennessee Peer Review Law. Accordingly, the Court cannot say that the minutes of the safety committee are privileged under the statute, and therefore, the Court finds that the minutes from June 26, 2003 to December 31, 2003 should be produced. Like the Strunk incident report, these minutes may be produced pursuant to a mutually acceptable protective order, and the Court reserves ruling on the admissibility of such minutes at trial.

For the foregoing reasons, the plaintiff's Motion to Compel [Doc. 24] is **GRANTED IN PART** and **DENIED IN PART**.

### III. MOTIONS IN LIMINE

#### A. Defendants' First Motion in Limine

The defendants move, pursuant to Rule 407 of the Federal Rules of Evidence, to exclude comment and evidence regarding any subsequent remedial measures taken by Scott County Hospital related to the area outside of the emergency room. [Doc. 30]. The defendants argue that none of the exceptions listed in Rule 407 apply in this case, and even if such an exception were applicable, the relevance of such evidence would be substantially outweighed by the danger of unfair prejudice to the defendants.

The plaintiff argues that evidence of subsequent remedial measures is admissible for two reasons. First, the plaintiff contends that Rule 407 does not apply to subsequent remedial measures taken by a non-party, and that the subsequent safeguards installed on the emergency dock were not installed by the defendants, but rather by a subsequent lessee of the hospital, Attentus Healthcare ("Attentus"). Second, the plaintiff argues that evidence of subsequent repairs is admissible to impeach the defendants' claim that the dock area was not dangerous. [Doc. 43].

In a supplemental response, the plaintiff submits several corporate documents in support of its contention that Attentus shares no common corporate identity with the defendants. Under these circumstances, the plaintiff argues, exclusion of evidence of subsequent remedial measures would not serve the underlying purpose of Rule 407, as Attentus would not have been influenced by any fear of future liability. As such, the plaintiff contends, the defendants should not be allowed to take advantage of steps that were actually taken by a separate entity to remedy what that entity considered to be a danger. [Doc. 48].

8

Rule 407 of the Federal Rules of Evidence provides as follows:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct . . . or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

While the Sixth Circuit has not specifically addressed the issue, every other Courts of Appeals that has considered the issue has held that Rule 407 does not require the exclusion of subsequent remedial measures taken by a non-defendant. See Diehl v. Blaw-Knox, 360 F.3d 426, 430 (3d Cir. 2004); Mehojah v. Drummond, 56 F.3d 1213, 1215 (10th Cir. 1995); TLT-Babcock, Inc. v. Emerson Elec. Co., 33 F.3d 397, 400 (4th Cir. 1994); Raymond v. Raymond Corp., 938 F.2d 1518, 1524 (1st Cir. 1991); Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 888 (9th Cir. 1991); O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990); Dixon v. International Harvester Co., 754 F.2d 573, 583 (5th Cir. 1985); Lolie v. Ohio Brass Co., 502 F.2d 741, 744 (7th Cir. 1974). "The logic for this exception to Rule 407 is that a nondefendant will not be inhibited from taking remedial measures if those measures are used against a defendant." 2 Joseph M. McLaughlin, Jack B. Weinstein, & Margaret A. Berger, Weinstein's Federal Evidence § 407.05[2] (2d ed. 2006); Diehl, 360 F.3d at 430 ("The admission of remedial measures by a non-party necessarily will not expose that non-party to liability, and therefore will not discourage the non-party from taking the remedial measures in the first place."). Based upon this persuasive authority, the Court concludes that Rule 407 would not be applicable in this case to exclude the evidence of subsequent remedial measures taken by non-parties.

However, even if Rule 407 does not apply, the evidence of subsequent remedial measures taken by a non-party must still satisfy the general requirements of relevancy under Rules 401, 402, and 403. On this point, the First Circuit has noted that "[a]t best, subsequent remedial measures are considered marginally probative of prior negligence." Keller v. United States, 38 F.3d 16, 31 (1st Cir. 1994). Such evidence may also pose a risk of unfair prejudice as well. See Russell v. Page Aircraft Maintenance, Inc., 455 F.2d 188, 191-92 (5th Cir. 1972) (finding the relevance of subsequent remedial measures of non-party to be "tenuous" and the possibility of prejudice to the defendant to be "quite great" when the plaintiff sought to admit evidence solely to show that the defendant's conduct was not reasonable and safe under the circumstances).

In the present case, the plaintiff's counsel stated at the hearing that he seeks to admit evidence of subsequent remedial measures in order to show that the defendants did not act reasonably under the circumstances. The Court finds that the subsequent remedial measures taken by Attentus are only marginally relevant to the issue of whether the defendants were reasonable in maintaining the dock in the manner they did, and that the marginal relevance that this evidence might have is substantially outweighed by the danger of unfair prejudice to the defendants. See Fed. R. Evid. 403. Accordingly, the evidence of subsequent remedial measures will not be admitted on this basis.

The plaintiff further argues that evidence of subsequent repairs is admissible to impeach the Hospital's defense that the configuration of the emergency room exit and the location of the dock did not create a dangerous condition. Specifically, the plaintiff seeks to impeach the testimony of the Hospital's risk manager, Ms. Smithers, who stated in her deposition that she did

10

not consider the dock area to be a dangerous condition because "no one had ever had any problem and I didn't think about it being a danger to anyone."

Rule 407 recognizes that evidence of subsequent remedial measures may be used to impeach a witness. However, before admitting such evidence for the purpose of impeachment, the Court must still ensure that the general relevancy standards of Rules 401, 402, and 403 are met. Weinstein's Federal Evidence § 407.07[1]. Again, the Court finds that the subsequent remedial measures by Attentus are only marginally relevant to the issue of whether the dock was a dangerous condition. The fact that a subsequent hospital management company decided to install a gate and other safety measures after the plaintiff's fall does not make it any more or less likely that the defendants acted unreasonably prior to the plaintiff's fall. The marginal relevance that this evidence might have is further substantially outweighed by the danger of unfair prejudice to the defendants. See Fed. R. Evid. 403. Accordingly, the Court will not admit evidence of subsequent remedial measures for the purposes of impeachment.

For these reasons, the defendants' Motion in Limine No. 1 to Exclude Comment and Evidence of Subsequent Remedial Measures [Doc. 30] is **GRANTED**.

**B.** **Defendants' Second Motion in Limine**

The defendants move the Court to exclude comment and evidence regarding the "left versus right" issue regarding the November 26, 2003 x-ray taken of the plaintiff's knee at Scott County Hospital. [Doc. 33]. For good cause shown, the defendants' Motion in Limine No. 2 to Exclude Comment and Evidence Regarding the "Left Versus Right" Issue Regarding the November 26, 2003 X-Ray Taken of the Plaintiff's Knee [Doc. 33] is **GRANTED**. The parties have agreed to redact reference to the "left versus right" issue in the plaintiff's medical records.

11

## C. Defendants' Third Motion in Limine

The defendants move to exclude evidence of any falls other than the fall at issue in this case. [Doc. 40]. Specifically, the defendants seek to exclude any reference to or evidence regarding the June 23, 2003 fall of Dillard Strunk. The defendants argue that Mr. Strunk's fall was not similar to the plaintiff's fall in that Mr. Strunk fell off the stairs next to the dock after fainting, having a stroke, or having a seizure. Accordingly, the defendants argue, Mr. Strunk's fall should not be admissible.

The plaintiff responds[2], arguing that Mr. Strunk's fall is sufficiently similar to be admissible for the purpose of showing knowledge of a dangerous condition on the part of the defendants. [Doc. 49]. The plaintiff contends that the Stunk incident should have at the very least spurred the hospital to investigate any dangers created by the dock and to take remedial steps to eliminate that danger.

Both sides have submitted excerpts of the deposition testimony of Mr. Strunk, as well as the deposition testimony of two of the witnesses to his fall. [Docs. 47, 49]. This testimony, however, is somewhat inconsistent and is far from conclusive on the issue of whether Mr. Strunk's fall and the plaintiff's fall are similar. Upon reviewing this testimony, the Court cannot say as a matter of law where Mr. Strunk fell, whether he fell off the dock or the ramp adjacent to the dock,

---

[2]The plaintiff filed a motion [Doc. 44] seeking an extension of time to file a response to this motion until after the plaintiff had an opportunity to depose Mr. Strunk and the witnesses to his fall. For good cause shown, the plaintiff's Motion for Extension of Time [Doc. 44] is **GRANTED**. The Court notes that the plaintiff's response was filed on July 24, 2006. [Doc. 49].

12

or what caused him to fall. In short, the Court cannot conclude as a matter of law at this time that Mr. Strunk's fall is not similar to the plaintiff's fall so as to render evidence regarding the Strunk fall completely inadmissible. It will be for the jury to determine whether Mr. Strunk's fall was sufficiently similar to the plaintiff's fall so as to put the defendants on notice of the alleged dangerous condition. Accordingly, the defendants' Motion in Limine No. 3 to Exclude Comment and Evidence Regarding Other Falls [Doc. 40] is **DENIED**.

**IV.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE**

The defendants move for an Order granting summary judgment in their favor. For grounds, they contend that there is no genuine issue of material fact, and that they are entitled to a judgment as a matter of law. [Doc. 36]. The plaintiff moves to strike defendants' motion, arguing that the motion was not timely filed. [Doc. 42].

The Scheduling Order entered in this case provides that any dispositive motions should be filed no later than 120 days before trial, and that "failure to timely file such motions will be grounds to summarily deny them." [Doc. 19 ¶6(b)]. The defendants' motion for summary judgment was filed on July 6, 2006, only 40 days before trial. The Court finds that the defendant has not stated good cause for this untimely filing. Accordingly, the plaintiff's Motion to Strike [Doc. 42] is **GRANTED**, and the defendants' Motion for Summary Judgment [Doc. 36] is hereby **DENIED**.

## V. CONCLUSION

For the foregoing reasons, (1) the plaintiff's Motion for Extension of Time [Doc. 20] is **DENIED AS MOOT**; (2) the plaintiff's Motion to Compel [Doc. 24] is **GRANTED IN PART** and **DENIED IN PART**; (3) the defendants' Motion in Limine No. 1 to Exclude Comment and Evidence of Subsequent Remedial Measures [Doc. 30] is **GRANTED**; (4) the defendants' Motion in Limine No. 2 to Exclude Comment and Evidence Regarding the "Left Versus Right" Issue Regarding the November 26, 2003 X-Ray Taken of the Plaintiff's Knee [Doc. 33] is **GRANTED**; (5) the defendants' Motion for Summary Judgment [Doc. 36] is **DENIED**; (6) the defendants' Motion in Limine No. 3 to Exclude Comment and Evidence Regarding Other Falls [Doc. 40] is **DENIED**; (7) the plaintiff's Motion in Limine (Expert Witness) [Doc. 41] is **DENIED AS MOOT**; (8) the plaintiff's Motion to Strike [Doc. 42] is **GRANTED**; and (9) the plaintiff's Motion for Extension of Time [Doc. 44] is **GRANTED**.

**IT IS SO ORDERED.**

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge